```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

CRAIG RIGGIO,

                Petitioner,

vs.                              Case No. 2:07-cv-355-FtM-29DNF

SECRETARY, Department of Corrections,

                Respondent.

_____

## OPINION AND ORDER

Petitioner, Craig Riggio (hereinafter "Riggio" or "Petitioner"), initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on May 29, 2007[1] challenging the revocation of community control for his plea-based convictions arising out of the Twentieth Judicial Circuit, Charlotte County, Florida (case numbers 02-165-CF and 02-191-CF). Petitioner filed a Memorandum of Law in Support of his Petition (Doc. #2, Memorandum). The Petition raises one claim for relief:

> Whether the trial court's denial of a continuance violated Riggio's Sixth Amendment right to counsel of choice.

Petition at 5.

---

[1] Although the Petition (Doc. #1) was filed in the Court on May 31, 2007, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

Pursuant to the Court's Show Cause Order (Doc. #7), Respondent filed a Response to the Petition (Doc. #11, Response), and exhibits in support thereof. See Doc. #12, Respondent's Notice of Filing Exhibits and Doc. #13, Appendix to Exhibits (Exhs. 1-26). Respondent submits that Petitioner's sole claim for relief is unexhausted and procedurally barred. Response at 6. In the alternative, Respondent submits that Petitioner fails to satisfy the threshold requirements provided in 28 U.S.C. § 2254(d) and (e). Response at 6.

Petitioner filed a Reply to the Response (Doc. #16, Reply), with an exhibit. Petitioner contends that his claim is exhausted because he raised the federal dimension of the claim on direct appeal. Reply at 2-3. Further, Petitioner argues that the trial court's decision was in contravention to federal law because the trial court failed to make any inquiry into the reasonableness of Riggio's request for a continuance. Id. at 6-9.

**I.**

On January 29, 2003, Riggio pled no contest to child abuse (case number 02-165-CF) and possession of cocaine and sale and delivery of cocaine (case number 02-191-CF) pursuant to a negotiated plea agreement. Exh. 3. In accordance with the terms of the plea agreement, on February 10, 2003, the court sentenced Riggio to two years community control to be followed by three years probation. Id.

On September 12, 2003, the circuit court issued an arrest warrant based upon the allegation that Riggio violated the terms of his community control. Exh. 4. On September 23, 2003, Riggio was arrested on the violation of community control warrant. Exh. 5. On October 7, 2003, the State filed an amended affidavit of violation of community control charging Riggio with the following violations of the conditions of his community control:

> On August 13, 2003, Riggio submitted a urine specimen belonging to another person and admitted to providing the false sample ("August 13 violation");
>
> On May 22, 2003, Riggio went to the Westchester Gold Pawn Shop and was not scheduled to be at that location ("May 22 violation");
>
> On August 11, 2003, Riggio went to the Westchester Gold Pawn Shop and was not scheduled to be at that location ("August 11 violation"); and,
>
> On September 13, 2003, Riggio was away from his approved residence when visited by his probation officer ("September 13 violation").

Exh. 6. Riggio, who was already being held in the Charlotte County Jail, was served with the amended warrant on October 9, 2003. Exh. 7.

The court appointed Richard Kolody, Assistant Public Defender, to represent Riggio. At a November 10, 2003 docket sounding, the court granted the defense's motion for a continuance, noting that Riggio intended "to hire [his] own attorney." Exh. 8. The court then scheduled Riggio's violation hearing for January 22, 2004. <u>Id.</u>

On January 19, 2004, Riggio filed a *pro se* "request" with the court seeking a second continuance because his "[bank] account has been defrauded." Exh. 9 at 1.[2] Petitioner explained that "I paid someone to retain a lawyer for me[,] and the person took my $2200 for his personal use. I have no way of retaining a lawyer until the bank straightens out my account." Id. at 2. Petitioner requested "approx[imately] 3 weeks for the bank and detectives to straighten out [his] account." Id. at 1. Petitioner further advised the court that he had selected "Pine Price" as his attorney. Id.

At the commencement of January 22, 2004 hearing, the following exchange occurred:

> **THE COURT**: Okay. Bring him out. State prepared to proceed?
>
> **MR. BURNS**: State is ready, Your Honor.
>
> **THE COURT**: Mr. Kolody, you ready?
>
> **MR. KOLODY**: No, we're not, Your Honor. We're going to again ask the Court to continue the matter. Because he -- again, Mr. Riggio is indicating he plans to retain private counsel. It's our position that he has the right to legal counsel of his choosing. He apparently wants to retain Mr. Price.

---

[2] Riggio's *pro se* motion was not filed in the circuit court until January 21, 2004, but Riggio provided a copy of the motion to prison officials on January 19, 2004, as evidenced by the date the motion was provided to "intake" at the jail. Florida follows the "mailbox rule", Norvilus v. State, 23 So. 3d 1256 (Fla. 3d DCA 2009), and thus the motion is deemed filed on January 19, 2004.

> **THE COURT**: Well, this matter has been continued for over 60 days for him to do that and it hasn't happened. I deny the request. Call your first witness.

Exh. 10 at 5, lines 5-19. The court made no further inquiries about defense counsel's preparedness, nor did the court ask any questions as to why Petitioner required further time to retain Mr. Price.

The State proceeded with its case and the court took judicial notice of the files in Petitioner's previous cases (case numbers 02-165 and 02-191). Id. at 5-6. The State then called Riggio's probation officer and the probation officer who conducted the random drug screening on Riggio as witnesses. The defense called Riggio as its sole witness. At the conclusion of the hearing the trial court found Riggio not guilty of the September 18 violation, but guilty of the other three violations. Id. at 58-59. The court then adjudicated Riggio guilty on each count in both case numbers 02-165CF and 02-191CF, and sentenced Riggio to five years imprisonment for the child abuse count in case number 02-165CF, five years imprisonment for the possession of cocaine count in case number 02-191CF, and fifteen years imprisonment for the sale of cocaine count in case number 02-191CF, less time served, the sentences to run concurrently. Id. at 63.

Riggio, represented by Special Assistant Public Defender Jean Marie Henne, filed a direct appeal claiming that "the trial court erred in denying Mr. Riggio's request for a continuance." Exh. 13 at 10. The State filed an answer brief. Exh. 14. On February 2,

2005, the appellate court *per curiam* affirmed Riggio's convictions and sentences without opinion. Riggio v. State, 895 So. 2d 421 (Fla. 2d DCA 2005); Exh. 15. Riggio filed this timely[3] Petition for Writ of Habeas Corpus with this Court on May 29, 2007.

**II.**

Because Riggio filed his Petition after the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this action is governed by the AEDPA. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007). Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

---

[3]The Response is silent as to whether the Petition is timely filed. See generally Response. Nonetheless, the Court independently finds that the Petition is timely filed due to Petitioner's other post-conviction filings, which, although relevant for purposes of the federal limitations period, are not relevant to the sole ground for relief before the Court.

-6-

## A. Exhaustion and Procedural Default

Respondent argues that Petitioner failed to exhaust the issue he currently seeks to litigate in federal court, and that this issue is now procedurally defaulted. Accordingly, Respondent seeks dismissal of the Petition.

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue. 28 U.S.C. § 2254(b)(1)(A).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted.) To fairly present a claim means that the same federal claim must be presented to the state courts with sufficient clarity that a reasonable reader would understand its federal underpinnings. Picard v. Connor, 404 U.S. 270, 275 (1971); McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005); Kelly v. Sec'y Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004). The language in the federal and state habeas petitions need not be identical. Green v. Nelson, 595 F.3d 1245, 1254 (11th Cir. 2010).

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state

procedural rules." Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). Such a procedural default will only be excused if Petitioner shows both "cause" for the default and actual "prejudice" resulting from the asserted error, House v. Bell, 547 U.S. 518, 536-37 (2006); Mize, 532 F.3d at 1190, or exceptional circumstances. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892.

Respondent argues that Petitioner is procedurally barred because he failed to exhaust the federal dimension of his claim in the State court. Response at 6. In particular, Respondent contends that Petitioner only raised his issue "as one of abuse of discretion for denying Riggio's motion for continuance." Id. at 9. Respondent states that Petitioner made only "one reference in the body of the brief to the Sixth Amendment . . . and appellant counsel cited only state law regarding the propriety of granting or denying a defendant's motion for continuance for the purposes of obtaining private counsel." Id. The Court finds Respondent is both legally and factually incorrect.

Petitioner's "Appellant's Initial Brief" to the Second District Court of Appeals summarized his argument as follows:

> The trial court erred in denying Mr. Riggio's request for a continuance to obtain private counsel to represent him at his revocation of community control hearing. The trial court did not make any findings that Mr. Riggio's request for a continuance was in bad faith or that the delay was arbitrary. **The Sixth Amendment protects Mr. Riggio's right to obtain the counsel of his own choosing,**

**and error in permitting him to do so constituted prejudicial error, per se.**

Exh. 13 at 10 (emphasis added). Petitioner further argued that the trial court erred by not conducting any further inquiry as to whether the defense was ready to proceed with court appointed counsel after defense counsel advised the trial court that he was not ready to proceed and requested the continuance in order for Petitioner to obtain private counsel. Id.

Additionally, the body of the argument in the "Appellant's Initial Brief" states "[f]urthermore, the U.S. Constitution, Sixth Amendment protects the right of a defendant to be represented by the attorney of their choosing." Id. at 11. Petitioner cited Foster v. State, 704 So.2d 169 (Fla. 4th DCA 1997) for this proposition. Id. at 11. Foster had relied upon Wheat v. U.S., 486 U.S. 153 (1988) and other federal appellate precedents to determine that the trial court denied a criminal defendant his Sixth Amendment rights by failing to permit the defendant counsel of his choice. Additionally, Petitioner cited to the federal case of Linton v. Perini, 656 F.2d 207, 209 (6th Cir. 1981) for the proposition that a trial court cannot arbitrarily deny a client his right to be represented by counsel of his choice. Id. at 11. Petitioner concluded that the trial court's failure to make any findings in denying Petitioner's request for a continuance under the circumstances, as well as the court's failure to inquire whether court appointed counsel was affording effective assistance

after being advised that counsel was not ready to proceed, constituted an abuse of the court's discretion. Id. at 13.

The Court finds that Petitioner fairly presented the constitutional dimensions of his federal claim to the State court. Not only did Petitioner explicitly raise the Sixth Amendment by name, but he relied upon a state case and a federal case which were predicated solely on federal law. This is clearly sufficient. Dye v. Hofbauer, 546 U.S. 1, 4 (2005); Baldwin, 541 U.S. at 32(suggesting that a litigant could meet the exhaustion requirement by citing as part of his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). Thus, the Court rejects Respondent's procedural default argument and will address Petitioner's claim on the merits.

**B. Denial of Motion to Continue Hearing to Obtain Counsel of Choice**

Where a petitioner's claim raises a federal question, was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

>established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146.

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." Ward, 591 F.3d at 1155 (internal quotations and citation omitted); Mitchell v. Esparza, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either

unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.

Petitioner asserts that the trial court's denial of his motion for a continuance violated his Sixth Amendment right to counsel of choice. Petition at 5. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Amend. 6, United States Constitution. For a defendant in a criminal prosecution who does not require appointed counsel, the Sixth Amendment includes the right to choose the attorney who will represent him. Wheat v. United States, 486 U.S. 153, 159 (1988)). If a defendant is wrongfully deprived of counsel of choice, the error is structural, does not require a showing of prejudice, and automatically requires reversal. United States v. Gonzalez-Lopez, 548 U.S. 140, 146-51 (2005). The right to counsel of choice is not unlimited, and the limitations include consideration of a trial court's calendar. Gonzalez-Lopez, 548 U.S. at 146-51.

Denial of a continuance for purposes of retaining counsel of choice may or may not result in a Sixth Amendment violation. In addressing due process concerns in the denial of a continuance, Ungar v. Sarafite, 376 U.S. 575(1964) stated:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

Id. at 589-90. Morris v. Slappy, 461 U.S. 1 (1983) addressed the issue of "whether it was error for the Court of Appeals to hold that the state trial court violated respondent's Sixth Amendment right to counsel by denying respondent's motion for a continuance until the Deputy Public Defender initially assigned to defend him was available." Id. at 3. Slappy stated:

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.

Id. at 11-12.  The Eleventh Circuit has summarized the principles from these cases as follows:

> The proper exercise of the trial court's discretion thus requires a delicate balance between the defendant's right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice.  Defendants are only guaranteed a fair or reasonable opportunity to select the attorney of their choice.
>
> When deciding whether a denial of a continuance impinged on the defendant's "fair and reasonable opportunity" to choose counsel, reviewing courts should consider a number of factors, including: (1) the length of the delay; (2) whether the counsel who becomes unavailable for trial has associates prepared to try the case; (3) whether other continuances have been requested and granted; (4) the inconvenience to all involved in the trial; (5) whether the requested continuance is for a legitimate reason; and (6) any unique factors.

United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005).

Applying the deferential standard of review required by both the federal habeas standards and the review of the denial of a motion for a continuance, the Court finds that the state courts' decision was contrary to, and involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  The trial court abused its discretion in denying Petitioner's request for a continuance, and as a result improperly denied Petitioner his right to counsel of choice.

Petitioner was requesting a short delay of only three-weeks. Petitioner had previously requested only one continuance, and that request was made at the sounding before a hearing date had been set for the matter.  There would have been little inconvenience to

-14-

those involved in the matter. The revocation proceedings were before the court sitting without a jury. Riggio's matter was the last matter before the trial court that day, so there would have been no disruption the State court's other cases scheduled for that day. See Exh. 20 at 5, lines 1-3 (where the court remarks that "we only have one [Riggio] left . . . ."). The State only called two witnesses: Petitioner's parole officer and the parole officer who administered an urinalysis on Petitioner. Petitioner had filed a motion setting forth the circumstances underlying his need for the continuance. Exh. 10. Further, Petitioner diligently filed his motion, albeit days before the revocation hearing, as evidenced by the date of withdrawals from Petitioner's Bank of America Savings Statement. Since Petitioner was in jail, he was limited in his ability to make the necessary arrangements to have funds withdrawn from his savings account. While the trial court may not have been aware of the document (since it was filed the day before the hearing, even though deemed filed two days before that), the trial court may no attempt to determine the basis for the request during the court proceeding.

Significantly, and contrary to Respondent's assertion, appointed counsel said he was not ready to proceed to trial when questioned by the court at the commencement of the hearing. Id. at 5, lines 8-9. The trial court completely disregarded defense counsel's statement that he was not ready to proceed that day. Additionally, in denying the motion the trial court failed to

consider or discuss any of the factors required by the Supreme Court. Instead, the trial court summarily denied Petitioner's motion, noting only that Petitioner failed to retain counsel within the sixty days previously afforded to him, without making any inquiry as to why counsel had not been retained.

Consequently, based upon the record, the Court finds that the trial court arbitrarily insisted upon expediting Petitioner's revocation hearing by denying Petitioner's motion for a continuance, which constitutes an abuse of discretion. Due to the trial court's erroneous denial of a continuance, Petitioner was denied his right to counsel of his choice.

ACCORDINGLY it is hereby

**ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. #1) is **GRANTED**.

2. A writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **GRANTED** and the February 2, 2004 Order entered by the Twentieth Judicial Circuit Court for Charlotte County, finding Craig Riggio had willfully, materially and substantially violated the terms and condition of his community control, revoking his community control, adjudicating him guilty of the underlying charges, and sentencing him to various terms of imprisonment is **VACATED**.

3. The State of Florida shall commence a new revocation hearing for Craig Riggio within 180 days of this Opinion and Order.

Craig Riggio's plea-based convictions for sale of cocaine, child abuse and possession of cocaine are not affected by this Opinion and Order.

4. The Clerk of the Court shall enter judgment accordingly, provide a copy of this Opinion and Order and the Judgment to the Clerk of the Court for the Twentieth Judicial Circuit, Charlotte County, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __29th__ day of March, 2010.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record